SEYFARTH SHAW LLP
Giovanna A. Ferrari (SBN 229871)
Email: gferrari@seyfarth.com
Chantelle C. Egan (SBN 257938)
Email: cegan@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Ellen E. McLaughlin (Admitted Pro Hac Vice in Related Case *Alex Morgan, et. al. v. United States Soccer Federation, Inc.* (United States District Court, Central District of California Case No. 2:19-cv-01717-RGK-AGR)
E-mail: emclaughlin@seyfarth.com
Brian M. Stolzenbach (Admitted Pro Hac Vice in Related Case *Alex Morgan, et. al. v. United States Soccer Federation, Inc.* (United States District Court, Central District of California Case No. 2:19-cv-01717-RGK-AGR)
E-mail: bstolzenbach@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Attorneys for Petitioner
UNITED STATES SOCCER FEDERATION, INC.

FILED
FEB 04 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SOCCER FEDERATION, INC., <br><br> Petitioner, <br><br> v. <br><br> U.S. WOMEN'S NATIONAL TEAM PLAYERS ASSOCIATION, <br><br> Respondent. | Case No. CV 20 80029 MISC. <br><br> **UNITED STATES SOCCER FEDERATION, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Subpoena served in *Alex Morgan, et. al. v. United States Soccer Federation, Inc.* (United States District Court, Central District of California, Case no. 2:19-cv-01717-RGK-AGR) |

JSC

UNITED STATES SOCCER FEDERATION, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA

TO THE U.S. WOMEN'S NATIONAL TEAM PLAYERS ASSOCIATION AND ITS COUNSEL AND ALL PARTIES OF RECORD IN UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA CASE NO. 2:19-CV-01717-RGK-AGR:

**PLEASE TAKE NOTICE** that on a date and at a time to be determined, or as soon thereafter as this matter may be heard, in a Courtroom to be determined,[1] in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Petitioner the U.S. Soccer Federation, Inc. ("U.S. Soccer" or "Federation") will and hereby does move, pursuant to Federal Rules of Civil Procedure 37 and 45, for an order compelling the U.S. Women's National Team Players Association ("Women's Union") to produce unreacted versions of fourteen e-mails, and their attachments, exchanged between the Women's Union and the U.S. National Soccer Team Players Association ("Men's Union") in response to the Federation's third-party subpoena issued in the case entitled *Alex Morgan et al. v. The U.S. Soccer Federation,* Case no. 2:19-cv-01717-RGK-AGR, pending in the United States District Court, Central District of California.

This motion is made on the grounds that the Women's Union redacted significant portions of these communications on the grounds that they disclosed information protected by the qualified collective bargaining privilege held by the Men's Union. However, the redacted information necessarily lacks the requisite confidentiality to qualify as privileged and, in any event, the Men's Union waived any claimed privilege in the information by voluntarily disclosing it to the Women's Union—a wholly separate and independent entity.

This motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith and the declarations of Tom King and Giovanna A. Ferrari, the arguments of counsel and the records and files in this and the *Morgan* case.

DATED: February 4, 2020         SEYFARTH SHAW LLP

                                       By:  */s/ Giovanna A. Ferrari*
                                               Giovanna A. Ferrari
                                               Chantelle C. Egan
                                               Attorneys for UNITED STATES SOCCER FEDERATION, INC.

---

[1] The U.S. Soccer Federation, Inc. will provide a date, time and location for the hearing in an updated notice once the case is assigned.

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF RELIEF REQUESTED ................................................................. 1

II. VENUE ........................................................................................................................ 1

III. FACTUAL BACKGROUND ...................................................................................... 2

IV. PROCEDURAL BACKGROUND .............................................................................. 3

V. ARGUMENT ............................................................................................................... 5

    A. The Collective Bargaining Privilege Does Not Extend To Information Shared Externally or Whose Confidentiality Is Not Maintained. ................................................................. 6

    B. By Providing The Information to the Women's Union, The Men's Union Waived Any Claimed Qualified Collective Bargaining Privilege. .......................................... 8

    C. Neither The Common Interest nor the Joint Defense Doctrines Excuse The Waiver of Any Claimed Qualified Collective Bargaining Privilege. ................................. 9

VI. CONCLUSION .......................................................................................................... 11

UNITED STATES SOCCER FEDERATION'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Berbiglia, Inc.*,
   233 NLRB 1476 (1977) ..........................................................................................6, 7

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) ..........................................................................................8

*Boise Cascade Corp.*,
   279 NLRB 422 (1986) ..........................................................................................6

*Bryant v. Mattel, Inc.*,
   573 F. Supp. 2d 1254 (C.D. Cal. 2007) ..........................................................................................10

*Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*,
   2016 WL 4967716 (D. Nev. Sept. 15, 2016) ..........................................................................................8

*Dowling v. Am. Haw. Cruises, Inc.*,
   971 F. 2d 423 (9th Cir. 1992) ..........................................................................................7

*Dukes v. Wal-Mart Stores, Inc.*,
   2013 WL 1282892 (N.D. Cal., Mar. 26, 2013) ..........................................................................................8

*Feshbach v. S.E.C.*,
   5 F. Supp. 2d 774 (N.D. Cal. 1997) ..........................................................................................8

*Granite Partners v. Bear, Stearns & Co., Inc.*,
   184 F.R.D. 49 (S.D.N.Y. 1999) ..........................................................................................5

*Hernandez v. Tannien*,
   605 F. 3d 1095 (9th Cir. 2010) ..........................................................................................8

*Kerns v. Caterpillar, Inc.*,
   2008 WL 351233 (M.D. Tenn., Feb. 7, 2008) ..........................................................................................8

*Lira v. Chipotle Mexican Grill, Inc.*,
   2018 WL 2128707 (N.D. Cal. May 9, 2018 ) ..........................................................................................5

*In re Pacific Pictures Corp.*,
   679 F. 3d 1121 (9th Cir. 2012) ..........................................................................................9

*Patrick Cudahy, Inc.*,
   288 N.L.R.B. 968 (1988) ..........................................................................................6, 7

*Pennsylvania Truck Lines, Inc. v. Int'l Brotherhood of Teamsters*,
   1990 WL 65706 (E.D. Pa. 1990) ...................................................................... 6

*Tennenbaum v. Deloitte & Touche*,
   77 F.3d 337 (9th Cir. 1996) ........................................................................... 9

*U.S. v. Perelman*,
   737 F. Supp. 2d 1221 (D. Nev. 2010), *aff'd* 695 F. 3d 866 (9th Cir. 2012) ......... 5

*U.S. v. Wilson*,
   960 F. 2d 48 (7th Cir. 1992) ......................................................................... 7

*under Harvey's Wagon Wheel, Inc. v. NLRB*,
   550 F. 2d 1139 (9th Cir. 1976) ..................................................................... 4

*United States v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003) .............................................................. 9, 10

*United States v. Gann*,
   732 F. 2d 714 (9th Cir. 1984) ....................................................................... 9

*United States v. Weissman*,
   195 F.3 d 96, 100 (2d Cir. 1999) .................................................................. 10

*University of Pennsylvania v. E.E.O.C.*,
   493 U.S. 182 (1990) ..................................................................................... 8

*Weil v. Investment/Indicators, Research and Management, Inc.*,
   647 F.2d 18 (9th Cir. 1981) .......................................................................... 5

*Wultz v. Bank of China, Ltd.*,
   304 F.R.D. 38 (D.D.C. 2014) ........................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ..................................................................................... 5

Fed. R. Civ. P. 37(a)(2) ..................................................................................... 1

Fed. R. Civ. P. 45(c)(2) ..................................................................................... 1

*Fed. R. Civ. P. 45(d)(3)(iv)* .............................................................................. 4

Fed. R. Civ. P. 45(f) .......................................................................................... 1

Fed. R. Evid 501 ............................................................................................... 8

iii

UNITED STATES SOCCER FEDERATION'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF RELIEF REQUESTED

The U.S. Soccer Federation ("U.S. Soccer" or "Federation") seeks an order compelling the U.S. Women's National Team Players Association ("Women's Union") to produce unreacted versions of fourteen e-mails, and their attachments, exchanged between the Women's Union and the U.S. National Soccer Team Players Association ("Men's Union"). The Women's Union produced these communications in response to the Federation's subpoena issued on September 3, 2019, but redacted significant portions on the grounds that they disclosed information protected by the qualified collective bargaining privilege held by the Men's Union. However, the redacted information necessarily lacks the requisite confidentiality to qualify as privileged and, in any event, the Men's Union waived any claimed privilege in the information by voluntarily disclosing it to the Women's Union—a wholly separate and independent entity. Accordingly, the Federation requests the Court enter an order compelling the Women's Union to produce the e-mail communications, un-redacted, in their entirety no later than three calendar days following this Court's entry of an order in this matter.

## II. VENUE

This court is the proper venue to file a motion to enforce the subpoena. A motion to enforce a subpoena compelling production of documents must be made in the court where discovery will be taken. Fed. R. Civ. P. 37(a)(2). The court determining compliance with the subpoena must be within 100 miles of where the relevant entity regularly transacts business. Fed. R. Civ. P. 45(c)(2). The Women's Union's registered place of business is 2193 Fillmore Street, San Francisco, California. Accordingly, the Women's Union's place of business falls beyond the 100-mile scope of the U.S. District Court for the Central District of California—the seat of the underlying action (Case No. 2:19-cv-01717-RGK-AGR)—but well within the Northern District of California where the underlying subpoena was served. Because the Women's Union regularly transacts business within the jurisdiction of the U.S. District Court for the Northern District of California, it is the appropriate venue to file this motion.

Nonetheless, the Federation respectfully requests the Court exercise its discretion under Fed. R. Civ. P. 45(f) to transfer this motion to the Central District of California where the underlying action is pending. Fed. R. Civ. P. 45(f). Due to the highly complex and intricate nature of the underlying action,

1

Magistrate Judge Alicia G. Rosenberg is in the best position to rule on the Federation's motion due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying Action. *See Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) ("Exceptional circumstances" warranting transfer of a subpoena-related motion to quash include the interests of judicial economy and avoiding inconsistent results).

## III. FACTUAL BACKGROUND

On March 8, 2019, certain members of the U.S. Senior Women's National Soccer Team (the "Women's Team") filed in the United States District Court, Central District of California (Case no. 2:19-cv-01717-RGK-AGR) a putative class action on behalf of themselves and other similarly situated current and former Women's Team players, alleging that the Federation compensates the Women's Team less than similarly situated male soccer players because of their sex (the "Action"). The Court conditionally certified the proposed class on November 8, 2019.

The Federation compensated each member of the Women's Team pursuant to a collective bargaining agreement ("CBA") negotiated by the Women's Union. The Federation compensated members of the U.S. Senior Men's National Team (the "Men's Team") pursuant to a different CBA negotiated by the Men's Union. By way of example:

- **Women's Union:** The Women's Union negotiated a collective bargaining agreement in 2012-2013 for the 2013-2016 period which includes a 2005-2012 collective bargaining agreement and Memorandum of Understanding dated March 19, 2013. In 2016-2017, the Women's Union negotiated the current collective bargaining agreement, which covers the five-year period from 2017-2021.
- **Men's Union:** The Men's Union negotiated its own collective bargaining agreement with U.S. Soccer covering the eight-year period from 2011-2018.

The Women's Union and the Men's Union are entirely distinct labor organizations, each of which represents and advocates on behalf of its unique, non-overlapping members. The two unions also have separate leadership, and separate places of business: Becca Roux is the current Executive Director of the Women's Union, and Mark Levinstein is the Acting Executive Director and General Counsel for

the Men's Union. The Women's Union offices are in San Francisco, California and the Men's Union offices are in Washington, D.C.

Each union, representing the unique interests of their members, separately and independently negotiated their individual collective bargaining agreements. *At no time was any representative of the Women's Union a part of, or present at, the collective bargaining negotiations between the Federation and the Men's Union. Similarly, at no time was any representative of the Men's Union a part of, or present at, the collective bargaining negotiations between the Federation and the Women's Union.* Indeed, the Women's Union does not participate in, or share any leadership or decision-making responsibility with respect to, the collective bargaining process for the Men's Union.

As separate labor organizations whose members (the players) had different priorities, the negotiated CBAs between the Women's Union and Men's Union have different structures, contract lengths, and materially vary in terms. Indeed, the CBAs for each team exclusively outline terms impacting either the Women's Team or the Men's Team—never both. For example, the Men's Union negotiated a "pay-for-play" compensation structure on behalf of the Men's Team under which Men's Team players receive per-game payments contingent on the players' selection for training camp or competition. By contrast, the Women's Union negotiated guaranteed base salaries and benefits for Women's Team players not tied to selection for games or training plus additional game bonuses based on team performance. Although representatives of both the Men's Union and the Women's Union both communicate directly with the Federation, they do so on behalf of, and with respect to the objectives of, their respective members. (*See* Declaration of Tom King, Managing Director of Administration of U.S. Soccer).

## IV. PROCEDURAL BACKGROUND

On September 3, 2019, the Federation issued a Subpoena to the Women's Union requesting, among other items, production of any correspondence between it and the Men's Union regarding collective bargaining or equal pay. The relevant request read:

> *Request No. 28: Any correspondence (whether in paper or electronic format, including text messages, voicemails, and emails) between the WNTPA [the Women's Union] or its agents and the United States National Soccer Team Players Association [the Men's Union] or its agents regarding collective bargaining with U.S. Soccer or regarding equal pay.*

(Declaration of Giovanna A. Ferrari ("Ferrari Decl."), ¶ 2, Ex. A).

On September 17, 2019, the Women's Union responded to the Subpoena in a letter, in relevant part reading:

> *Objection [to Request No. 28]*: *The WNTPA [further] objects to this request to the extent it seeks information protected by the attorney work product doctrine or documents revealing collective bargaining strategy that are protected under Harvey's Wagon Wheel, Inc. v. NLRB, 550 F. 2d 1139, 1143 (9th Cir. 1976) and subsequent case law, or confidential business information protected under Fed. R. Civ. P. 45(d)(3)(iv). Subject to the foregoing objections, the WNTPA will produce responsive documents that are not privileged and do not reveal collective bargaining strategy in its possession, custody or control that are located after a reasonable search.*

(Ferrari Decl., ¶ 3, Ex. B).

Subsequently, the Women's Union produced documents responsive to the Subpoena, including the fourteen redacted e-mails, between itself and the Men's Union. The fourteen emails in question were heavily redacted with "MNTPA Bargaining Strategy" redaction tags.[2]

Of these fourteen e-mails, eight were sent before March 8, 2019—the date Plaintiffs filed the instant Action. These eight e-mails were sent between October 2012 and December 2018. One document is redacted in its entirety and bears no visible date indicators. The five remaining emails were sent between March and August 2019—after the Action was filed.

Collectively, these emails were between Mark Levinstein, Acting Executive Director and General Counsel for the Men's Union, and Becca Roux, Executive Director for the Women's Union, in addition to select counsel for the Women's Union and Men's Union depending on the communication. A number of emails also went directly to Jeffrey Kessler, counsel for the Morgan plaintiffs. Many of these emails also included the website administrator for the Men's Union, J Hutcherson, as their recipient.

The parties conferred on several occasions regarding the Women's Union redactions. The Women's Union takes the position that it will not produce un-redacted versions of the fourteen emails at

---

[2] These documents were designated "Confidential" by the Women's Union and as such, are not attached to this motion. The Federation will provide copies of these documents for an *in camera* review or file them under seal, depending on the assigned judge's preference.

issue, on the grounds that the information redacted reveal the Men's Union's collective bargaining strategy and is privileged. The Federation explained that unless and until the unions agree to merge or otherwise agree to a joint collective bargaining agreement, a qualified collective bargaining privilege cannot apply to information shared between two independent unions who separately negotiate distinct—and vastly different—agreements on behalf of separate and non-overlapping bargaining units. The parties are unable to reach an informal resolution absent court intervention. (*See, e.g.*, Ferrari Decl., ¶ 4, Ex. C).

## V. ARGUMENT

The scope of permissible discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *See, e.g., Lira v. Chipotle Mexican Grill, Inc.*, 2018 WL 2128707, at *2 (N.D. Cal. May 9, 2018) (explaining relationship between Rule 45 and Rule 26). Fed. R. Civ. P. 26(b)(1) (discovery permitted "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). The Women's Union does not challenge the relevance of the communications between it and the Men's Union sought by the Federation's subpoena to this action, nor does it dispute the Federation's need for such communications in this case. Rather, it objects to the disclosure of certain portions of these communications on the grounds that they contain information regarding the collective bargaining strategy of the Men's Union and are thus protected from disclosure by the qualified collective bargaining privilege.

As with all evidentiary privileges, the burden of proving a qualified collective bargaining privilege and the information withheld rests with the party asserting it—the Women's Union. *See U.S. v. Perelman*, 737 F. Supp. 2d 1221, 1231 (D. Nev. 2010) (defendant failed to meet burden of establishing applicability of evidentiary privilege for union members' communications with union officials), *aff'd* 695 F. 3d 866 (9th Cir. 2012); *see also Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (attorney-client privilege). To meet its burden, the Women's Union must not only affirmatively establish that the privilege applies, but also that it has not been waived. *See Weil*, 647 F.2d at 25; *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) (party asserting attorney-client privilege and work product protection must affirmatively establish non-waiver).

The Women's Union cannot meet its burden. Any qualified collective bargaining privilege held by the Men's Union does not apply to information regarding its collective bargaining strategies or priorities that it has shared with the Women's Union—a separate and independent union. Any information contained in unprivileged communications with a third party that is neither a party to, nor a part of the negotiation process for, the collective bargaining agreement between the Federation and the Men's Union, lacks the lacks the requisite confidentiality on which the qualified collective bargaining privilege rests. Even so, the voluntary disclosure by the Men's Union of purportedly privileged collective bargaining strategy information to the Women's Union constitutes a waiver of the privilege. No basis thus exists for the Women's Union to withhold relevant, responsive information from the communications at issue.

### A. The Collective Bargaining Privilege Does Not Extend To Information Shared Externally or Whose Confidentiality Is Not Maintained.

The qualified collective bargaining privilege, in effect, is an extension of the attorney-client privilege to an employer's or a union's internal communications pertaining to its collective bargaining strategy or deliberative processes. *See Patrick Cudahy, Inc.*, 288 N.L.R.B. 968 (1988) (extending attorney client privilege to communications regarding negotiation of collective bargaining agreement). Like the attorney-client privilege, the collective bargaining privilege emanates from the recognition that, for the collective bargaining process to work, an employer's or union's representatives must be able to confidentially formulate their positions and devise their strategies). *See Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977) ("if collective bargaining is to work, the parties must be able to formulate their positions and devise their strategies without fear of exposure"); *Boise Cascade Corp.*, 279 NLRB 422, 432 (1986) ("A proper bargaining relationship between the parties mandates that [the employer] be able to confidentially evaluate possible interpretations of the existing labor agreement and that it be able to plan in confidence a strategy for altering or changing its maintenance improvement program").

The qualified collective bargaining privilege, therefore, protects from disclosure only union documents or other information shared **internally** among a union's representatives and agents that may reveal **confidential** aspects of the union's collective bargaining strategies. *See e.g., Pennsylvania Truck Lines, Inc. v. Int'l Brotherhood of Teamsters*, 1990 WL 65706 (E.D. Pa. 1990) (protecting from

disclosure confidential notes and communications among employer's counsel, members, and officers for the purpose of developing positions to be taken in collective bargaining negotiations); *Berbiglia*, 233 NLRB at 1495 (revoking employer's subpoena seeking examination of confidential union records).

As with all privileges, the qualified collective bargaining privilege is narrowly construed. *Dowling v. Am. Haw. Cruises, Inc.*, 971 F. 2d 423, 425 (9th Cir. 1992) (policy favoring open discovery requires that privileges must be strictly construed); *U.S. v. Wilson*, 960 F. 2d 48, 50 (7th Cir. 1992) (because evidentiary privileges impede the fact-finding function by excluding relevant evidence, federal courts generally disfavor privileges and construe them narrowly). Certainly, the qualified collective bargaining privilege is not any broader than the attorney-client privilege between a union attorney and union-officials. *See Patrick Cudahy, Inc.*, 288 N.L.R.B. 968 (1988) (extending attorney client privilege to communications regarding negotiation of collective bargaining agreement).

Under these standards, the qualified collective privilege cannot apply to information contained in non-privileged communications between the Men's Union and the Women's Union, regardless of whether it reveals certain aspects of collective bargaining strategy of the Men's Union. Not only are such communications not **internal** communications between the Men's Union, its agents or its members—the type of documents protected by the privilege—but, by their nature, such communications cannot contain **confidential** information regarding the Men's Union's collective bargaining strategies. The Women's Union and the Men's Union are two separate and independent unions, whose separate leaderships, independently negotiate vastly different agreements on behalf of their respective separate and non-overlapping bargaining units. Because the Women's Union is neither a party to, nor a part of the negotiation process for, the collective bargaining agreement between the Federation and the Men's Union, the confidentiality of any aspect of the Men's Union's internal collective bargaining strategy is lost when it is disclosed to the Women's Union.

Not surprisingly, the Women's Union has not directed the Federation to any authority to suggest that the qualified collective bargaining privilege extends to information revealing aspects of a union's bargaining strategy that the union has voluntarily shared with a separate and independent union. Certainly, existing federal law does not recognize an evidentiary privilege in confidential communications between two unions, and the Supreme Court has cautioned against courts invoking their

7

UNITED STATES SOCCER FEDERATION'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA

authority under Fed. R. Evid 501 to develop rules of privilege expansively. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (declining to create a new privilege against the disclosure of peer-review materials).

### B. By Providing The Information to the Women's Union, The Men's Union Waived Any Claimed Qualified Collective Bargaining Privilege.

Even if the information withheld by the Women's Union falls within the qualified collective bargaining privilege, the Men's Union has waived the privilege with respect to the information contained within the communications at issue. Like other evidentiary privileges, the qualified collective bargaining privilege can be waived by the voluntary disclosure of privileged information to a third-party. *Hernandez v. Tannien*, 605 F. 3d 1095, 1100 (9th Cir. 2010); *see Kerns v. Caterpillar, Inc.*, 2008 WL 351233, at *5 (M.D. Tenn., Feb. 7, 2008) (limiting disclosure of documents discussing negotiations and collective bargaining strategies to those actually maintained in confidence within the union; "Defendants cannot maintain confidentiality of information herein which was previously disclosed to others that were not part of the negotiating process.")

Like the attorney-client privilege, the purpose of the qualified collective bargaining privilege held by the Men's Union is to protect the confidentiality of documents or information reflecting *its internal* collective bargaining strategies and deliberations. (*See* section III.A). That purpose ends when such confidential information is voluntarily disclosed to a third party. *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *7 (N.D. Cal., Mar. 26, 2013) ("Once the proverbial cat is out of the bag, the client has defeated the underlying purpose of maintaining confidentiality and therefore the communications are no longer worthy of protection"); *Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, 2016 WL 4967716, at *3 (D. Nev. Sept. 15, 2016) ("Since the basis for the attorney-client privilege is to protect confidential communications, that purpose ends when confidential communications are voluntarily disclosed to a third party"); *Feshbach v. S.E.C.*, 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997) (The attorney-client privilege applies only to maintain the confidentiality of the information claimed to be privileged).

Importantly, whether a party had the subjective intent to waive a privilege is irrelevant; the focus is on the act of disclosure to a third party. *See Bittaker v. Woodford*, 331 F.3d 715, 720 n. 4 (9th Cir. 2003) ("an express waiver need not be effectuated by words or accompanied by the litigant's subjective

intent") (citations omitted); *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) ("we have admonished that the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege."). As a result, the party asserting a privilege must affirmatively demonstrate non-waiver. *United States v. Gann*, 732 F. 2d 714, 723 (9th Cir. 1984) (defendant failed to meet burden of proving privilege applied because could not show communication with attorney was made in confidence). The Women's Union has not met this burden.

Notwithstanding that the any qualified collective bargaining privilege held by the Men's Union does not attach to the redacted information, the voluntary disclosure by the Men's Union of purportedly confidential information regarding its internal collective bargaining strategies to the Women's Union waives the privilege. The Women's Union does not dispute that it is wholly separate and independent from the Men's Union. Nor can it dispute that it neither participates in the negotiation process for, nor is a party to, the collective bargaining agreement between the Federation and the Men's Union. Certainly, the Women's Union is neither a representative, an agent, nor a member of the Men's Union such that it is a party to the collective bargaining relationship between the Federation and the Men's Union.

By disclosing information to the Women's Union purportedly reflecting its confidential collective bargaining strategies, the Men's Union waives any privilege that may attach to such information.

### C. Neither The Common Interest nor the Joint Defense Doctrines Excuse The Waiver of Any Claimed Qualified Collective Bargaining Privilege.

Any suggestion that the "common interest" or "joint defense" doctrine applies to the communications between the Men's Union and the Women's Union, and in some circumstances, the Plaintiffs' counsel in the *Morgan* case, is also unsupported. Rather than a separate privilege, the joint defense and common interest doctrines are narrow exceptions to the general rule that disclosure of an attorney-client communication to a third party waives the privilege. *In re Pacific Pictures Corp.*, 679 F. 3d 1121, 1129 (9th Cir. 2012); *United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003). Under the doctrine, disclosure of a privileged communication to a third party does not destroy the privilege if the disclosures were made in the course of an on-going and joint effort to set up a common

defense strategy (i.e., a "joint defense") or in the pursuit of a common legal enterprise, and intended to advance a common legal interest (i.e., "common interest"). *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1274-75 (C.D. Cal. 2007); *Bergonzi*, 216 F.R.D. at 495. As with any privilege, the common interest and joint defense doctrines are narrowly construed, and expansions of the doctrine should be "cautiously extended." *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999). Where the two unions are not parties to the same litigation and have negotiated separate agreements with radically different structures and terms, no such "joint effort" or "joint defense" can properly exist.

No court has applied the "common interest" or "joint defense" doctrines to extend the qualified collective bargaining privilege. But even assuming such precedent existed, the disclosures by the Men's Union of information regarding its collective bargaining strategies or deliberations to the Women's Union cannot possible be deemed a "joint effort." Nothing in the communications at issue suggests that the disclosure by the Men's Union of its collective bargaining strategy was part of a joint effort between the Men's Union and the Women's Union to set up a joint defense strategy in anticipation of future joint litigation. And plainly, neither the Men's Union nor its members are party to the *Morgan* suit, nor are the communications at issue related to the underlying action.[3] Consequently, the "joint defense" doctrine does not excuse the waiver by the Men's Union of any purported privileged information shared with the Women's Union.

Nor does anything in these communications suggest that the disclosures by the Men's Union were made in pursuit of a common legal enterprise, much less intended to advance a common interest. Certainly, the Women's Union does not participate in, or share any leadership or decision making responsibility with respect to, the collective bargaining process for the Men's Union. Nor does it have any specific legal interest in the resulting agreement negotiated by the Men's Union. Throughout the majority of the time period of the communications at issue, the Men's National Team was subject to a 2011-2018 collective bargaining agreement, while the Women's National Team negotiated and operated under three successive collective bargaining agreements (2005-2012; 2013-2016; 2017-2021). The two unions separately and independently negotiated these agreements on behalf of their non-overlapping

---

[3] At least eight of the fourteen emails were exchanged before the *Morgan* suit was even filed so these withheld communications clearly do not relate to the *Morgan* litigation.

10

UNITED STATES SOCCER FEDERATION'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA

members—indeed, no individual from the Men's Union participated in the Women's Union collective bargaining negotiations and vice versa—for the purpose of satisfying the individual needs, expectations, and desired outcomes for their respective memberships. Reflecting their different interests, the resulting agreements cover different time frames, different compensation and fringe benefits, different tournaments, and different scope of rights.

Simply put, the Women's Union and Men's Union do not have sufficiently overlapping litigation or other legal interest in the purported collective bargaining strategy information shared by the Men's Union with the Women's Union, such that "joint defense" or "common interest" doctrines justify extending the qualified collective bargaining privilege to such information. By providing that information to the Women's Union, the Men's Union waived any claimed qualified collective bargaining privilege in such information, and neither the common interest nor joint defense doctrines excuse the waiver.

## VI. CONCLUSION

For the reasons stated above, U.S. Soccer requests that the Court enforce the subpoena, and compel the Women's Union to produce the relevant e-mail communications with the Men's Union, unredacted, and in their entireties no later than three calendar days following this Court's Order on this motion. By their very nature, these emails cannot contain information protected from the disclosure by the qualified collective bargaining privilege held the Men's Union. Even if they did, the Men's Union waived any such privilege by disclosing the information to the Women's Union (and in some cases, the *Morgan* Plaintiffs' counsel)—a third party sharing no common legal interest with or common legal goals with the Men's Union.

DATED: February 4, 2020                    SEYFARTH SHAW LLP


By: /s/ Giovanna A. Ferrari
    Giovanna A. Ferrari
    Chantelle C. Egan
Attorneys for UNITED STATES SOCCER
FEDERATION, INC.

11

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Seyfarth Shaw, LLP, 560 Mission Street, Suite 3100, San Francisco, CA 94105. On February 4, 2020, I served the following documents:

**UNITED STATES SOCCER FEDERATION, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**

I hereby certify that I served the foregoing documents via e-mail on counsel of record for the Women's Union, the Men's Union, Plaintiffs in *Alex Morgan, et. al. v. United States Soccer Federation, Inc.* (United States District Court, Central District of California Case No. 2:19-cv-01717-RGK-AGR) at the following addresses:

Matthew Clash-Drexler (mcdrexler@bredhoff.com)
Elisabeth Oppenheimer (eoppenheimer@bredhoff.com)
Mark Levinstein (mLevinstein@wc.com)
Jeffrey L. Kessler (jkessler@winston.com)
David G. Feher (dfeher@winston.com)
Cardelle B. Spangler (cspangler@winston.com)
Diana Hughes Leiden (dhleiden@winston.com)
Jeanifer E. Parsigian (jparsigian@winston.com)
Lev Tsukerman (ltsukerman@winston.com)

I declare under penalty of perjury under the laws of the United States of America that the above information is true and correct. Executed this 4th day of February, 2020.

                         */s/ Giovanna A. Ferrari*
                         Giovanna A. Ferrari